UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

JONATHAN NETTLES,

      *Plaintiff,*

v.

DAVID DUFFET,

      *Defendant.*

                           /

CASE NO. 1:22-cv-10615
DISTRICT JUDGE THOMAS L. LUDINGTON
MAGISTRATE JUDGE PATRICIA T. MORRIS

**REPORT AND RECOMMENDATION**

**I.    RECOMMENDATION**

For the following reasons, I **RECOMMEND** that pursuant to 28 U.S.C. § 1915(e)(2), the Court *sua sponte* **DISMISS** Plaintiff's complaint **IN PART**.

If this Report is adopted, the Court would dismiss all claims except for Nettles' individual capacity, false arrest claim related to his August 2018 arrest.

**II.    REPORT**

    **A.    BACKGROUND**

Jonathon Nettles alleges that David Duffet, the chief of the Bridgeport Township Police Department, instructed three officers to break into Nettles' home. (ECF No. 1, PageID.5.) Following Duffett's orders, the officers entered Nettles' home without his permission, drew their firearms on him, and handcuffed him after "forc[ing] him to the ground." (*Id.*) Once Nettles had been handcuffed, one of the officers, Sergeant Skabardis, choked him with both hands while

1

the other two officers pinned him down. (*Id.*) Nettles spent the next three days in jail before he was eventually released. (*Id.*)

While Nettles was in jail, Skabardis moved Nettles' "estranged" wife into Nettles' home. (*Id.*) According to Nettles, this prevented him from returning home after his release because a personal protection order prevented him from contacting his wife at that time. (*Id.*)

About two weeks after Nettles' arrest, his wife filed for divorce, and, just a day later, accused him of sexually abusing his daughter. (*Id.*) Unfortunately for Nettles, his wife was friends with Duffet, and she told him that she believed Nettles had sexually abused his own daughter. (*Id.*) Duffet then directed Skabardis and one other officer to enter Nettles' house, without a warrant, and "seize [his] property."[1] (ECF No. 1, PageID.5.)

Nettles does not state whether a warrantless search ever occurred, but he does allege that Skabardis eventually searched his home after receiving a search warrant. (*Id.*) However, Nettles alleges that Skabardis omitted an exculpatory statement from his affidavit. (*Id.*) Specifically, he alleges that Skabardis omitted a statement from Nettles' daughter where she stated that she had not been sexually abused by Nettles. (*Id.*) Nettles alleges that Skabardis omitted this statement "intentionally," but he does not explain how Skabardis would have been aware of the statement. (*Id.*)

---

[1] Nettles also appears to suggest that Duffett orchestrated his August 2018 arrest as a favor for Nettles' wife. (*Id.*) Indeed, Nettles alleges that Duffett "pursued cases for his friends as favors" and that he "did so" for Nettles' wife. (*Id.*) However, it does not appear that Duffett ordered the August 2018 arrest because Nettles' wife accused him of child abuse. (*Id.*) Nettles explains that his wife did not accuse him of child abuse until *after* his August arrest, and he also mentions that after his wife accused him of child abuse, Duffett ordered only two officers to search Nettles' home. (*Id.*) This search likely does not refer to the August 2018 incident because his 2018 arrest involved three officers and Nettles does not allege that his home was searched until after September 28. (*Id.*) Thus, liberally reading his complaint, Nettles seems to claim that Duffet ordered his August 2018 arrest purely as a favor to Nettles' wife, not because of any child abuse allegations. *See Bovee v. Coopers & Lybrand C.P.A.*, 272 F.3d 356, 360 (6th Cir. 2001).

When Skabardis executed the search warrant, he "seized and searched CDs" even though the CDs fell outside the scope of the warrant. (*Id.*) A state police officer then spent the next "three months" searching through CDs, DVDs, and "other media," that were recovered from Nettles' home, but found "nothing criminal" on any of the seized items. (*Id.*) The state police officer returned the items to Skabardis; however, on request of Nettles' wife, Skabardis sent one of the CDs back to the state police with a "fake" image depicting child sexual abuse. (*Id.*)

Nettles was arrested in April 2019 after the state police discovered this image. (*Id.*) At his probable cause hearing, Duffett testified "to support the actions of Sgt. Skabardis." (*Id.*) Although Nettles sent Duffett a letter explaining Skabardis' constitutional violations before the hearing, Duffett ignored Nettles' complaints and failed to mention Skabardis' "constitutional violations" at the probable cause hearing. (*Id.*)

Nettles mentions that he spent two and a half years in jail. (*Id.* at PageID.6.) After his release, Nettles filed this complaint, *in forma pauperis*, bringing several claims under 42 U.S.C. § 1983 (2012) against Duffett in both his individual and official capacities. (*Id*. at PageID.2.) Specifically, Nettles brings the following Fourth Amendment claims against Duffett: (1) false arrest based on his August 2018 and April 2019 arrests, (2) excessive force for his August 2018 arrest, and (3) "malicious prosecution" and "false testimony" for Duffett's testimony at Nettles' probable cause hearing. (*Id.* at PageID.3–5.) Nettles also alleges that his wife filed a "false police report" and seeks to hold Duffett liable for this report, claiming that the report violated

3

his Fourth Amendment rights. (*Id.*) Finally, Nettles brings an equal protection claim, broadly alleging that Duffett discriminated against him.[2] (ECF No. 1, PageID.3, 5.)

### B. LEGAL STANDARD

Plaintiff proceeds IFP, subjecting his claim to the screening standards in 28 U.S.C. § 1915(e)(2)(B) (2012). Since 1892, federal courts have possessed statutory power to permit civil actions IFP. *See Bruce v. Samuels*, 136 S. Ct. 627, 629 (2016). This power ensures that indigent individuals have equal access to the judicial system by allowing them to proceed without advancing the litigation fees and costs. *Flint v. Haynes*, 651 F.2d 970, 972 (4th Cir. 1981).

However, Congress recognized that "a litigant whose filing fees and court costs are assumed by the public, unlike a paying litigant, lacks an economic incentive to refrain from filing frivolous, malicious, or repetitive lawsuits." *Denton v. Hernandez*, 504 U.S. 25, 31 (1992) (quoting *Neitzke v. Williams*, 490 U.S. 319, 324 (1989)). To counteract these incentives, Congress crafted a screening procedure that requires the court to *sua sponte* review the complaints of all plaintiffs proceeding IFP and dismiss any before service of process if it determines that the action is frivolous or malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief against a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B).

When a plaintiff proceeds without counsel, the court must liberally construe the complaint and hold it to a less stringent standard than a similar pleading drafted by an attorney. *Haines v.*

---

[2] Nettles actually alleges that Duffett discriminated against him under the Fourth Amendment. (ECF No. 1, PageID.3, 5.) But because the Fourth Amendment provides no such protection, I will liberally construe this claim as an equal protection claim under the Fourteenth Amendment. *Bovee*, 272 F.3d at 360.

*Kerner*, 404 U.S. 519, 520 (1972). However, even *pro se* complaints must satisfy basic pleading requirements. *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989).

When considering whether a complaint states a claim, "[t]he court must construe the complaint in the light most favorable to the plaintiff, accept all the factual allegations as true, and determine whether the plaintiff can prove a set of facts in support of its claims that would entitle it to relief." *Bovee*, 272 F.3d at 360. Still, the plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The plausibility standard requires the plaintiff to "raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* at 555. (citations omitted). The complaint must include more than "labels and conclusions" or "formulaic recitation[s] of the elements of a cause of action." *Id.*

As noted, the IFP statute also requires federal courts to screen frivolous claims. The Supreme Court has established that "a complaint . . . is frivolous where it lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989).[3] A complaint is also frivolous and can be dismissed if it provides no basis for federal jurisdiction. *Carlock v. Williams*, 182 F.3d 916, 1999 WL 454880, at *2 (6th Cir. 1999) ("Since there is no basis for federal jurisdiction apparent on the face of Carlock's complaint . . . the district court properly dismissed the action as frivolous and for lack of subject matter jurisdiction."); *Humphries v. Various Fed. USINS Employees*, 164 F.3d 936, 941 (5th Cir. 1999) (citing caselaw for the

---

[3] The Court also held that the frivolousness analysis differed from the "failure to state a claim" analysis—a complaint might not be frivolous because it raises an arguable question of law but still fail to state a claim. *Id.* When *Neitzke* was decided, the statute allowed screening of frivolous or malicious claims, but had not yet been amended to permit screening for failure to state a claim. 28 U.S.C. § 1915(d). That amendment came in 1996. *See* Prison Litigation Reform Act of 1995, Pub. L. No. 104-134, Title VIII, § 804, 110 Stat. 1321 (April 26, 1996).

proposition that a complaint is frivolous and can be dismissed on screening if the subject matter is outside the court's jurisdiction); *see also* Fed. R. Civ. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action.").

### C. ANALYSIS

#### 1. Personal Involvement

To prevail on a § 1983 claim, a plaintiff must demonstrate that (1) the conduct about which he or she complains was committed by a person acting under color of state law and (2) that the conduct deprived him or her of a federal constitutional or statutory right. 42 U.S.C. § 1983. Additionally, a plaintiff must establish a "direct causal link" between the injury and the conduct of that defendant. *Hays v. Jefferson Cty., Ky.*, 668 F.2d 869, 872 (6th Cir. 1982) (citing *Rizzo v. Goode*, 423 U.S. 362, 371–72 (1976)). In other words, a plaintiff must make a clear showing that each named defendant was personally involved in the activity that forms the basis of the complaint. *Id.* at 375; *Copeland v. Machulis*, 57 F.3d 476, 481 (6th Cir. 1995).

Nettles fails to allege that Duffett was personally involved in several of the claims Nettles brings against him. Specifically, Nettles does not explain how Duffett was involved in Skabardis' excessive use of force, nor does Nettles allege that Duffett was involved with his 2019 arrest or his wife's police report. Additionally, Nettles does not explain how Bridgeport Township, whom he sues through his official capacity claims against Duffett, was personally involved in any of his claims. Because Nettles' complaint does not allege any personal involvement, these claims should be dismissed.

##### a. *Monell* Liability

The Court should dismiss Nettles' official capacity claims against Duffett. A claim against a government officer in his or her official capacity is a claim against the entity the official represents. *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989). Because Duffett is an employee of Bridgeport Township, Nettles' official capacity claims against Duffett are actually claims against Bridgeport Township. *Id.*; (ECF No. 1, PageID.5.) However, municipalities such as Bridgeport are not vicariously liable for the actions of their employees. *Monell v. Dep't of Social Svcs.*, 436 U.S. 658 (1978). Indeed, liability under § 1983 must be based on more than *respondeat superior*—each defendant must be personally involved in the activity that forms the basis of the complaint. *Id.*; *see also Rizzo*, 423 U.S. at 371–72; *Copeland*, 57 F.3d at 481.

For a municipality to be held liable under § 1983, it must have harmed the plaintiff through some "official policy or custom." *Monell*, 436 U.S. at 694; *see also Lipman v. Bush*, 974 F.3d 726, 734 (6th Cir. 2020). Nettles makes no such allegation. (*See* ECF No. 1, PageID.5.) Therefore, I suggest that Nettles bases his official capacity claims on nothing more than a theory of *respondeat superior*. *See Monell*, 436 U.S. at 694; *cf. Anjorin v. City of Detroit*, No. 12-13393, 2015 WL 1498466, at *2–3 (E.D. Mich. Mar. 31, 2015) ("Plaintiff's claims against . . . the individual police officers in their official capacities fail under *Monell* . . . ."). Accordingly, I suggest that these claims should be dismissed.

      **b.**    **August 2018 Arrest**

Nettles also has not alleged that Duffett was personally involved in his excessive force claim. Nettles mentions two incidents that could constitute an excessive use of force. First, Nettles states that Skabardis "choked" him "with both hands" while the other two officers pinned Nettles down on the floor. (ECF No. 1, PageID.5.) And second, Nettles alleges that the officers

7

who arrested him placed him in handcuffs and sat him in a police car "for over an hour," causing Nettles to lose circulation in his "hands and arms." (*Id.* at PageID.6.)

Duffett's only involvement with Nettles' August 2018 arrest was directing Skabardis and the other two officers to enter Nettles' home and arrest him. (*Id.* at PageID.5.) Nettles does not allege that Duffett directed the officers to choke him, nor does Nettles explain how Duffett might have predicted that by directing these officers to arrest Nettles, they would also choke him, even after he had been restrained. *See Mondragon v. Sena*, No. 18-0430, 2020 WL 954178, at *3 (D. N.M. Feb. 27, 2020) ("[D]efendants may be liable if they knew or reasonably should have known that their conduct would lead to the deprivation of a plaintiff's constitutional rights by others, and an unforeseeable intervening act has not terminated their liability."); *see also Bleiwas v. City of New York*, No. 15-10046, 2017 WL 3524679, at *8 (S.D.N.Y. Aug. 15, 2017). At most, Nettles seeks to hold Duffett liable for Skabardis' conduct on a theory of *respondeat superior*. But because § 1983 liability cannot be based merely on *respondeat superior*, the Court should dismiss this claim. *Monell*, 436 U.S. at 694.

Surely, however, the officers' use of handcuffs and their placement of Nettles in a police car would have been foreseeable consequences of Duffett's order to arrest Nettles. The government has the right to make arrests, and inherent in this right is the power "to use some degree of physical coercion" such as handcuffing suspects or placing suspects in cars. *See Graham v. Connor*, 490 U.S. 386, 396 (1989).

But even the use of common restraints such as handcuffs may constitute an excessive use of force. The Fourth Amendment permits the government to use a "reasonable" degree of force in effectuating an arrest. *Id.* at 395. The reasonableness of an officer's "use of force must be

8

judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Id.* at 396–97. Courts must consider the totality of the circumstances of a particular case, "including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Id.* at 396. Under this framework, the Sixth Circuit has held that handcuffing a suspect, alone, does not generally constitute an excessive use of force. *Neague v. Cynkar*, 258 F.3d 504, 508 (6th Cir. 2001). However, the use of handcuffs during a lawful arrest may be excessive if it physically injures the suspect. *Courtright v. City of Battle Creek*, 839 F.3d 513, 519 (6th Cir. 2016) (quoting *Neague*, 258 F.3d at 508).

Although not yet addressed by the Sixth Circuit, I suggest that his rule applies equally to unlawful seizures. *See Neague*, 258 F.3d at 508 n.2 (declining to consider whether the handcuffing of an individual incident to an unlawful arrest may be excessive even without physical injury). An excessive force claim concerns the "quantum of force" used by officers when seizing a person, not the justification for a seizure. *Bashir v. Rockdale Cty., Ga.*, 445 F.3d 1323, 1332 (11th Cir. 2006). An excessive use of force claim is "a discrete constitutional violation relating to the manner in which an arrest was carried out, and is independent of whether law enforcement had the power to arrest." *Id.* Thus, all circuit courts that have addressed the issue unanimously hold that an arrest is not *per se* excessive simply because it is unlawful. *Velazquez v. City of Long Beach*, 793 F.3d 1010, 1024 n.13 (9th Cir. 2015); *see, e.g., Snell v. City of York, Pa.*, 564 F.3d 659, 672 (3d Cir. 2009); *Papineau v. Parmley*, 465 F.3d 46, 61–62 (2d Cir. 2006). For these reasons, the Sixth Circuit's rule that the use of handcuffs is not excessive absent a "physical injury" should apply with equal force to unlawful arrests. *See*

*Cortez v. McCauley*, 478 F.3d 1108, 1129 (10th Cir. 2007) (explaining that when evaluating whether officers utilized excessive force when conducting an unlawful arrest, courts should ask assume, hypothetically, that the arrest was lawful for the purposes of analyzing excessive force).[4]

Here, apart from a conclusory statement that his arrest caused him "mental and physical harm," Nettles does not allege any physical injury. (ECF No. 1, PageID.5–6.) Rather, Nettles states only that at some point during his one-hour detainment in the officers' car he "lost circulation." (*Id.* at PageID.6.) By itself, lost circulation is not an injury, and although lost circulation over a prolonged period of time might cause permanent injury, Nettles does not mention any such injury in his complaint. *See, e.g.*, *Sebastian v. Ortiz*, 918 F.3d 1301, 1312 (11th Cir. 2019) (holding that permanent nerve damage caused by a loss of blood circulation from handcuffs could constitute excessive force). Nettles cannot survive dismissal simply because it is "possib[le]" that he suffered a more serious injury—Rule 8 requires him to plead facts that raise his "right to relief above the speculative level." *Twombly*, 550 U.S. at 555, 557; *cf. Grytsyk v. Morales*, No. 19-cv-3470, 2021 WL 1531225, at *25 (S.D.N.Y. Apr. 19, 2021) ("[C]onclusory allegations of injury, without reference to specific physical injuries, do not suffice as a matter of law."); *Livigni v. Ortega*, No. 15-CV-9454, 2016 WL 6143351, at *4 (S.D.N.Y. Oct. 19, 2016). Accordingly, Nettles' excessive force claims related to his 2018 arrest should be dismissed.

---

[4] Of course, the same "facts that gave rise to an unlawful" seizure might also "factor into the determination [of] whether the force used to make the [seizure] was excessive." *Velasquez*, 793 F.3d at 1024 (citing *Graham*, 490 U.S. at 394–97); *see also Lyons v. City of Xenia*, 90 F. App'x 835, 855 (6th Cir. 2004) (Tarnow, J., concurring). For example, the same facts that might undermine reasonable suspicion during an investigatory stop might also indicate that a particular suspect does not pose a threat to officers. *See Velasquez*, 793 F.3d at 1024–25; *Graham*, 490 U.S. at 394–95. But even so, an excessive force claim concerns a distinct harm from an unlawful arrest—the unlawful nature of an arrest, in itself, does not make an arrest excessively forceful. *Freeman v. Gore*, 483 F.3d 404, 417 (5th Cir. 2007)

### c.     False Police Report & May 2019 Arrest

Last, Nettles does not allege that Duffett was personally involved with the September 2018 police report or his 2019 arrest.  Indeed, Nettles alleges only that his wife filed a false police report accusing him of child abuse on September 12, 2018.  (*See* ECF No. 1, PageID.4–5.)  But Nettles does not describe any involvement that Duffett may have had with this report.  (*Id.*)  Likewise, although Nettles alleges that he was arrested without probable cause in May 2019, he provides no facts describing Duffett's involvement with this arrest.[5]  (*Id.*)  Accordingly, these claims against Duffett should be dismissed.  *See Hays*, 668 F.2d at 872.

### 2.     Absolute Immunity

The Court should also dismiss Nettles' malicious prosecution and false testimony claims.  Both claims stem from Duffett's false testimony at Nettles' probable cause hearing; however, Duffett is immune from suit for this testimony.  (*See* ECF No. 1, PageID.4–5.)  "It is well-settled that witnesses are granted absolute immunity from suit for all testimony provided in judicial proceedings."  *Spurlock v. Satterfield*, 167 F.3d 995, 1001 (6th Cir. 1999) (citing *Briscoe v. LaHue*, 460 U.S. 325, 330–31 (1983)).  This immunity applies "no matter how egregious or perjurious" the testimony, and it extends to a witness' false testimony at a probable cause hearing. *Id.*; *Thurmond v. Cty. of Wayne*, 447 F. App'x 643, 653 (6th Cir. 2011); *cf. Kean v. Anderson*, No. 4:05-cv-64, 2005 WL 194953, at *4 (W.D. Mich. Aug. 15, 2005).  Accordingly, the Court should dismiss Nettles' malicious prosecution and false testimony claims.

---

[5] Although Nettles appears to only bring an excessive force claim for his August 2018 arrest, he does not specify which arrest led to him losing circulation. (*Id.* at PageID.6.)  However, even if Nettles intended to bring an excessive force claim for his 2019 arrest, this claim should also be dismissed.  Nettles does not allege that Duffett was personally involved in his arrest, and even if he did, this incident would not constitute an excessive use of force. (*Id.* at PageID.5.)

11

### 3. Equal Protection

Last, I suggest that the Court should dismiss Nettles' equal protection claim because he does not allege enough facts for this Court to reasonably infer that he was discriminated against. The Fourteenth Amendment provides that "[n]o state shall . . . deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. "Fundamentally, the Clause protects against invidious discrimination among similarly-situated individuals or implicating fundamental rights." *Scarbrough v. Morgan Cty. Bd. of Educ.*, 470 F.3d 250, 260 (6th Cir. 2006). To succeed on an equal protection claim, a plaintiff must first show that he or she was intentionally discriminated against by a government official. *Id.*; *Arsan v. Keller*, 784 F. App'x 900, 912 (6th Cir. 2019) ("[O]nly intentional, purposeful discrimination violates the equal protection clause . . . ."). But even where a plaintiff establishes discrimination, a discriminatory government action will still be upheld if, depending on the classification at issue, it is adequately tailored to a sufficiently important government interest. *See Scarbrough*, 470 F.3d at 260–61.

For purposes of establishing discrimination under § 1983, a plaintiff "must prove the same elements required to establish a disparate treatment claim under Title VII . . . ." *James v. Hampton*, 592 F. App'x 449, 459–60 (6th Cir. 2015) (citing *Perry v. McGinnis*, 209 F.3d 597, 601 (6th Cir. 2000)). This means that at the pleading stage, a plaintiff need only "allege sufficient 'factual content' from which [a] court could 'draw the reasonable inference' of . . . discrimination." *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)); *see also Davis v. Prison Health Servs.*, 679 F.3d 433, 439–40 (6th Cir. 2012) (citing *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 511–12 (2002)). The complaint must "giv[e] rise to reasonably founded hope that

12

the discovery process will reveal relevant evidence to support [the plaintiff's] claims." *Lindsay v. Yates*, 498 F.3d 434, 440 n.6 (6th Cir. 2007) (internal quotation marks omitted) (quoting *Twombly*, 550 U.S. at 559–60).

Nettles alleges no facts which, taken as true, could allow the Court to reasonably infer discrimination. Although he alleges that Duffett discriminated against him, he does not explain how, and the Court need not accept conclusory allegations. *See Twombly*, 550 U.S. at 557; *cf.* ; *Sam Han v. U. of Dayton*, 541 F. App'x 622, 627 (6th Cir. 2013) (holding that a court could not "infer that the [defendant's] decision-making regarding [p]laintiff's employment was discriminatory simply based on the fact that he [was] a man, or that he [was] Asian-American, or both"); *Hatcher v. Hegira Programs, Inc.*, No. 19-cv-11720, 2020 WL 1083719, at *4–5 (E.D. Mich. Mar. 6, 2020). Accordingly, the Court should dismiss this claim against Duffett.

### III.  CONCLUSION

For these reasons, I recommend that the Court **DISMISS** Plaintiff's complaint **IN PART**.

### IV.  REVIEW

Rule 72(b)(2) of the Federal Rules of Civil Procedure states that "[w]ithin 14 days after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. A party may respond to another party's objections within 14 days after being served with a copy." Fed. R. Civ. P. 72(b)(2); *see also* 28 U.S.C. § 636(b)(1). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140, 155; *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505, 508 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947, 950 (6th Cir. 1981). The parties are advised that making some objections, but failing to raise others,

13

will not preserve all the objections a party may have to this Report and Recommendation. *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). According to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc. Any objection must recite precisely the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc. If the Court determines that any objections are without merit, it may rule without awaiting the response.

Date: April 1, 2022

S/ PATRICIA T. MORRIS
Patricia T. Morris
United States Magistrate Judge